UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-148 |
| | ) | (Phillips / Guyton) |
| VICENTE CORONA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter came before the Court upon the following pretrial motions, all of which have been resolved by previous oral ruling of this Court, or by agreement of the parties, as set forth herein:

**1. Motion to Exclude Hearsay Statements of Co-Defendants or Any Testimonial Statements of Non-Testifying Individuals From Any Joint Trial, Or, In The Alternative, For Severance [Doc. 56]**

This motion filed by defendant Vicente Corona, along with his supporting memorandum of law filed as [Doc. 57], sought remedy for issues anticipated to arise at a joint trial with co-defendant Jermaine Hughes, citing the Sixth Amendment Confrontation Clause; Federal Rules of Criminal Procedure, Rule 14(a); Bruton v. United States, 391 U.S. 123 (1968); and Crawford v. Washington, 541 U.S. 36 (2004). The parties agreed that this motion had become moot by the time of the hearing because Jermaine Hughes will not be proceeding to trial pursuant to an agreement reached with the government. Accordingly, Motion to Exclude Hearsay Statements of

Co-Defendants or Any Testimonial Statements of Non-Testifying Individuals From Any Joint Trial, Or, In The Alternative, For Severance [Doc. 56] is DENIED as moot.

## 2. Motion for Hearing to Determine Existence of Conspiracy [Doc. 58]

Mr. Corona asks the Court to conduct a hearing to determine the existence of the criminal conspiracy alleged by the government, or, alternatively, to direct the government to file a brief (as described more fully below) seven days before trial [Doc. 58] and [Doc. 59]. At the hearing of this motion, counsel for Mr. Corona made a thorough argument that a pretrial hearing to determine whether or not the government may satisfy its burden of proof on the existence of a conspiracy is appropriate before any co-conspirator statements may be admitted in the government's case-in-chief at trial. In addition to the authority cited in his memorandum of law, including Bourjaily v. United States, 483 U.S. 171, 180 (1987); United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917 (1979), and United States v. Vinson, 606 F.2d 149, 152-153 (6th Cir. 1979), Mr. Corona argued that Crawford v. Washington, 541 U.S. 36 (2004) has so dramatically changed the landscape for admission of statements that a pretrial determination of these issues is both prudent and necessary. Mr. Corona drew the Court's attention to a pretrial order issued by Magistrate Judge Dennis H. Inman, filed as an exhibit to his motion. Judge Inman's order, filed in United States v. Gunter, 2:05-CR-75, directs the government to submit "an 801(D)(2)(E) statement" to the District Court, with the purpose and procedure of such statement set forth as follows:

> If the indictment charges defendant(s) with a conspiracy, and if the government intends to offer evidence under F.R.E. 801(d)(2)(E), then the admissibility of an alleged co-conspirator's statements under F.R.E. 801(d)(2)(E) will be determined in accordance with *United States v. Vinson*, 606 F.2D 149 (6 Cir. 1979); specifically, such statements will be admitted subject to a later demonstration during the trial by a preponderance of the evidence that the

> statements were made during the course and in furtherance of the conspiracy.
>
> If the government intends to introduce a co-conspirator's statements under F.R.E. 801(d) (2) (E), the government shall submit to the District Judge, and serve upon opposing counsel, on the Friday preceding the commencement of the trial, a trial brief which must include the following: (1) the substance of the statements to be introduced under F.R.E. 801(d) (2) (E); (2) when those statements were made, where those statements were made, and to whom they were made; and (3) a summary of the evidence which the government will present to establish the existence of the conspiracy, that the declarant was a member of that conspiracy, and that the statements were made during and in furtherance of the conspiracy.
> ...

Order on Discovery and Scheduling [Doc. 59-1, ¶ 11].

The government resists this request as burdensome, time-consuming and uneconomic. The government further objects that Mr. Corona would be unfairly afforded additional discovery of the government's case beyond that otherwise provided [Doc. 101].

Under Federal Rules of Evidence Rule 801(d) (2) (E), "a statement is not hearsay if ... [t]he statement is offered against a party and is...a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In order for the government to avail itself of the co-conspirator exception of the hearsay rule, it must show by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the hearsay is offered was a member of the conspiracy and that the hearsay statement was made in the course and in the furtherance of the conspiracy. United States v. Vinson, 606 F.2d 144, 152 (6th Cir. 1979). This three-tiered review is known as an "Enright finding." See United States v. Enright, 579 F.2d 980 (6th Cir. 1978).

The Sixth Circuit approves of three alternative methods by which a district court can make a determination as to the admissibility of hearsay statements under the coconspirator exception

to the hearsay rule: (1) conduct a pretrial mini-hearing outside the presence of the jury and listen to the proof of the conspiracy, (2) require the government to produce non-hearsay evidence during the course of trial before making the necessary finding, and (3) admit the hearsay statements subject to a later demonstration of their admissibility. Vinson, 606 F.2d at 152-53. While all three methods for making an Enright finding are valid, the Sixth Circuit has criticized the first alternative as burdensome, time consuming and uneconomic.

While the District Court in Gunter, supra, devised a permissible alternative methodology for an Enright finding, this Court notes that it is the custom and general practice in this district to use the third of the Vinson options. In any event, the request relates directly to trial procedures and the admissibility of evidence at trial and will be addressed by the trial judge, District Judge Thomas W. Phillips. As to the timing of an Enright finding, District Judge Phillips will decide whether he desires to choose a method besides the third option before or during trial, as he deems appropriate. Accordingly, Mr. Corona's Motion For Hearing to Determine the Existence of Conspiracy **[Doc. 58]** is **DENIED**.

### 3. Motion to Compel Government to Provide Defendant With Exhibit and Witness List in Advance of Trial [Doc. 60]

Mr. Corona next moves the Court to exercise its discretion to order the government to produce a list of witnesses and exhibits it intends to use at trial. Mr. Corona argues that, while the government ordinarily is not required to produce such information, the Sixth Circuit has provided that in the rare case it is appropriate. Mr. Corona asserts that this is just such a case. Mr. Corona argues that a witness list is necessary and material to his defense because it is impossible for him to ascertain and interview persons who could be witnesses for the government. Mr. Corona argues that the instant case "spans the continent," allegedly involving people and events in Tennessee,

Georgia and California. He presents that there were several search warrants executed in California, a search warrant in Georgia, and a great volume of documentary and recorded evidence. Mr. Corona asks for a witness and exhibit list a short time before the commencement of the trial in order to prepare his defense.

During argument of the motion, counsel for Mr. Corona gave two examples of the order he seeks: United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (ordering disclosure of witness list 30 days before trial, exhibit list 45 days before trail); and United States v. Moss, No. 02-20145 (W.D. Tenn., 06/15/2005, Order [Doc. 538] at 5-7). In Kendricks, the issue of a witness list arose in the context of a remedy. The trial court had ordered the production of such a list and the government failed to comply. The Kendricks court was called upon to address the absence of any sanction for the government's disregard of the trial court's order. The 1980 Sixth Circuit opined:

> It is well recognized that defendants cannot obtain lists of prosecution witnesses as a matter of right, although the district court has discretion to order the prosecution to produce it. We do not condone the prosecution's failure to comply with the district court's order. However, the fashioning of a proper remedy to ameliorate any potential prejudice to the defendant's ability to prepare an effective defense is within the district judge's discretion. Inasmuch as there were few witnesses, their identity was revealed by other discovery, and the prosecution's theory of the case was relatively straightforward, we do not believe the district court abused its discretion in denying the motion to dismiss.
>
> Kendricks, 623 F.2d at 1168 - 1169) (citing United States v. Weatherspoon, 581 F.2d 595 (7th Cir. 1978); United States v. Harris, 542 F.2d 1283 (7th Cir.), cert. denied, United States v. Clay, 430 U.S. 934 (1976)).

In Moss, the pretrial motions and pleadings, as well as the Order cited by Mr. Corona, describe a terrible tangle of discovery-related issues. Moss involved one disclosure of 167 banker

5

boxes of papers, referenced as but one example by Judge Donald as she described the unusual chronology of that case, along with data on 20 desktop computers, seven mainframe computers and material reportedly in the possession of two foreign governments. Moss, 2005 WL 1972583, *1 (W.D.Tenn., 2005); and Order to Provide Witness and Exhibit List [Doc. 61-2], at 1-3.

The government responded in argument, as well as in its written submission, [Doc. 104] that the defendant is not entitled to know before trial whom it will call to testify. The government cites a number of Sixth Circuit cases holding that a defendant is not entitled to compel production of the government's witness list. United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir. 1993); United States v. McCullah, 745 F.2d 350, 353 (6th Cir. 1984); United States v. Algie, 667 F.2d 569, 571 (6th Cir. 1982); United States v. Dark, F.2d 1097, 1099 (6th Cir. 1979). The government argues that Federal Rules of Criminal Procedure, Rule 16 does not provide for the routine discovery of witness lists, but does not assert that the Court has no discretion to order the disclosure of witness lists in light of the rule and Sixth Circuit case law. Finally, it argues that even if the Court had this discretion, disclosure in the present case is inappropriate because it could expose witnesses to intimidation by Mr. Corona or others acting on his behalf.

"Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993) (citing Fed. R. Crim. P. 16). This rule is tempered by the government's obligation under Brady v. Maryland, 373 U.S. 83, 87 (1963), to provide the defendant with information that is favorable to his defense and material to either guilt or punishment. The government in the present case has acknowledged its duties under Brady. The government "acts at its own peril" if it fails to provide Brady materials in a timely fashion. United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).

There appears to be some tension in the case law regarding whether the Court has the discretion to order the government to produce a witness list even though Rule 16 does not require it.  Compare United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list), with Presser, 844 F.2d at 1285 (holding that Rule 16 provides no authority for compelling the government to disclose Brady material or any other evidence not required by the rule pretrial).  Even in holding that Rule 16 does not allow for discovery beyond its scope, the court has noted that "a trial court may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it," although it may not disregard specific statutory provisions such as the Jencks Act.  Id. at 1285 n.12.

Assuming that the Court has discretion to order disclosure of the government's witness list, the Court finds that Mr. Corona's case does not present circumstances so unusual as to warrant such an order.  Certainly, this criminal defendant would be better prepared to meet the government's accusations had he more information about the facts, the witnesses and exhibits that he may be facing.  This does not distinguish Mr. Corona from most, if not all, criminal defendants, however.  The Constitution does not require the prosecutor to share all useful information with the defendant.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case.")

Moreover, the Court is mindful of Judge Phillips' finding on February 22, 2007, that Mr. Corona poses a threat to witnesses who may be called to testify against him:

> Considering the factors stipulated by 18 U.S.C. § 3142(g), it appears to the court by clear and convincing evidence that defendant has not rebutted the presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant, there is a serious risk that the defendant will flee, and there is a serious risk that the defendant will attempt to threaten, injure or intimidate a prospective witness.
> Order of Detention [Doc. 250, at p. 5].

Mr. Corona's contention that he needs the list of witnesses in order to investigate the case and prepare for cross-examination is insufficient in light of the government's compelling interest in protecting these witnesses. Thus, the Court does not find that justice requires disclosure of a witness list in the present case. As to a list of exhibits, Mr. Corona has demonstrated no specialized need for a list of the government's exhibits in advance of trial that would justify this Court ordering discovery beyond that otherwise provided in the Discovery and Scheduling Order.[1] Mr. Corona's Motion to Compel Government to Provide Defendant With Exhibit and Witness List in Advance of Trial **[Doc. 60]** is **DENIED**.

### 4. Motion in Limine to Preclude Admissibility of Prior Convictions [Doc. 157]

The Federal Rules of Evidence, at Rule 609, provide for impeachment by evidence of conviction of certain crimes. Rule 609 follows the weight of traditional authority in its delineation of the convictions which may be so utilized: a crime punishable by imprisonment in excess of one year (a felony); or a crime involving an act of dishonesty or false statement by the witness. Rule 609(a)(1) and (2). Where the witness is the accused in a criminal trial, the court

---

[1] The Court observes that the government has affirmatively stated that it will provide a list of proposed exhibits to the trial court and defense counsel at the start of the trial.

must make an additional finding before use of the first class of conviction, a felony conviction, to impeach: that the probative value of admitting this evidence outweighs the prejudicial effect to the accused. Rule 609(a)(1).

The government asserts that Mr. Corona has the following criminal convictions:[2]

1. On November 6, 1987, a felony conviction for sale or transportation of a controlled substance in a California state court ("1987 case").

2. On February 27, 1989, a felony conviction for possession with intent to distribute cocaine in the United States District Court for the Central District of California ("1989 case").

3. On January 8, 1998, conviction for felony possession of a controlled substance in a California state court ("1998 case").

Mr. Corona asks the Court to preclude the use of these alleged prior felony convictions to impeach the defendant should he elect to testify at trial. Mr. Corona first argues that the convictions are too remote in time, and also that they do not involve "proof or admission of an act of dishonesty or false statement by the witness." Rule 609(a)(2).

Mr. Corona further asserts that Rule 404(b), as explained in United States v. Haywood, 280 F.3d 715, 721-25 (6th Cir. 2002) and United States v. Bakke, 942 F.2d 977, 983 (6th Cir. 1991), bars the use of a prior felony drug conviction to impeach the accused on trial for a drug offense. Mr. Corona argued that a pretrial determination as to the use of the 1997 conviction is appropriate and necessary to his preparation for trial.

The government response agrees that the convictions in the 1987 case and the 1989 case cannot be used to impeach Mr. Corona's testimony since they are over ten years old. [Doc. 182]. As to the 1998 case, the government asks that this Court reserve ruling for the trial court on the

---

[2] On December 7, 2006, the government gave notice of its intention to seek an enhanced penalty should Mr. Corona be convicted of a crime, filing four exhibits in support [Doc. 216].

grounds that only in the context of trial testimony can the court conduct the balancing test of probative value and prejudicial effect. The government also filed a supplemental response on this issue [Doc. 218]. In the supplemental response, the government primarily argues that the 1998 case may be used to enhance Mr. Corona's sentence, should he be convicted of a crime, but also offers an example of application to impeachment in People v. O'Brand, 92 California. App. 2nd 752, 755-56 (1949). The government argues that in the O'Brand case, California has determined that convictions set aside pursuant to § 1203.4 may be used to impeach a defendant during a subsequent prosecution. The issue was not squarely presented in O'Brand, however, as the appellant defendants did not raise that objection to introduction of the conviction.

Mr. Corona, likewise, filed an additional document pertaining to this issue, his Reply to Government's Response and Supplemental Response to Motion in Limine Regarding Prior Convictions [Doc. 267]. Mr. Corona expanded on his objection to impeachment use of the 1998 case in that the conviction had been later dismissed or set aside upon a showing of rehabilitation under California law. Mr. Corona argues that the 1998 case is controlled by Rule 609(c) which states:

> (c) Effect of pardon, annulment, or certificate of rehabilitation.--Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime that was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.
>
> F.R.E. 609(c).

AUSA Winck asked the Court for additional time to respond to this issue, as Mr.

Corona's last pretrial motion had been filed a short time before the hearing. [Doc. 267]. The Court agreed that the government should be afforded adequate response time, setting an April 18, 2007, deadline for the government to address the issues raised by the defendant in his Reply to Government's Response and Supplemental Response to Motion in Limine Regarding Prior Convictions [Doc. 267] if it chose to do so. The government has not responded.

Rule 609(c) exempts from impeachment certain convictions, those that ultimately ended in "pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted." It has not been argued that Mr. Corona was pardoned. An "annulment" is defined as "the act of nullifying or making void." Black's Law Dictionary (8th ed. 2004). The Court finds "annulment" does not describe the ultimate disposition of the 1998 case, as § 1203.4 expressly provides for the use of the conviction for certain purposes even after its operation, *infra*. California state law expressly provides for a "certificate of rehabilitation."[3] It has not been argued that Mr. Corona was the recipient of such a certificate. The remaining exception is for those convictions removed by "other equivalent procedure based on a finding of the rehabilitation of the person convicted." Rule 609(c).

The determinative California Penal Code section argued by the parties is entitled, "1203.4. Discharged petitioner; change of plea or vacation of verdict; dismissal of charge; release from

---

[3] Section 4852.13(a) of the California Penal Code (1996) provides:

"[I]f after hearing, the court finds that the petitioner has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship, the court may make an order declaring that the petitioner has been rehabilitated, and recommending that the Governor grant a full pardon to the petitioner. This order shall be filed with the clerk of the court, and shall be known as a certificate of rehabilitation."

11

penalties and disabilities; certificate of rehabilitation and pardon; application; pleading prior conviction in prosecution of subsequent offense; disclosure; firearms; reimbursement of costs; notice of petition for relief; pardon." This section provides:

> (a) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, **the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted,** except as provided in Section 13555 of the Vehicle Code. The probationer shall be informed, in his or her probation papers, of this right and privilege and his or her right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing. **However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery.**
>
> **Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Section 12021.**
>     …
>
> Cal. Penal Code § 1203.4 [emphasis added].

The remedy created by this California code section is based upon a defendant's good conduct, in essence: successful completion of probation and no new trouble with the law. If these terms are satisfied, the section provides that the person "be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." The relief has certain exceptions, set forth in the statute. The limitation clause relevant to Mr. Corona's situation reads: "However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed."

In determining that § 1203.4 does not result in an "expungement," the Ninth Circuit has described § 1203.4 as "contain[ing] a sweeping limitation on the relief it offers" by this clause. United States v. Hayden, 255 F.3d 768, 772 (2001). The Hayden court, in finding that the defendant's state convictions that were "set aside" pursuant to operation of § 1203.4 were not "expunged" for purposes of calculating a defendant's criminal history under United States Sentencing Guidelines, concluded:

> As the release of the "penalties and disabilities" clause of section 1203.4 has been so qualified in its application, it does not appear that it was thereby intended to obliterate the record of conviction against a defendant and purge him of the guilt inherent therein or to wipe out absolutely and for all purposes the dismissed proceeding as a relevant consideration and to place the defendant in the position which he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him.
> Hayden, 255 F.3d at 772.

Other circuits have concluded that a prior felony conviction, although "expunged" under § 1203.4, may be used for impeachment purposes in a subsequent criminal proceeding involving the

same party. United States v. Moore ; 556 F.2d 479 (10th Cir. 1977) (applying California law in federal court for trial conducted in Oklahoma). In Moore, the court concluded:

> It is clear from the foregoing that under California statutory law the prior conviction, though expunged, may still be used for impeachment purposes in a subsequent criminal proceeding involving the same party. The defendant argues that though such may well be true in a subsequent criminal proceeding brought in California, the same result does not obtain when the subsequent criminal prosecution is in a federal court.

…

> Rule 609(c), then, precludes the use of a prior felony conviction for impeachment purposes where the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure. However, whether there has been such an expungement, and the extent of such expungement, must in the instant case be determined by reference to California law. As indicated, the statute in question clearly states that the former conviction, though expunged, may be used in a subsequent criminal proceeding involving the same party. And such in our view has application in a subsequent criminal proceeding in federal court.

Moore, 556 F.2d at 484.

Mr. Corona also challenges the sufficiency of the proof to be offered to establish the 1998 conviction, the certified copy of the court minute entry of the court in the 1998 case (not a judgment of conviction) [Doc. 216-4]. The Court reserves for the District Court the issue of whether the quality of the evidence offered by the government is sufficient to establish a prior conviction, should the government fail to remedy the situation before trial.

### 5. Motion in Limine to Preclude Admissibility of Immigration Status [Doc. 158]

Mr. Corona objects to introduction of his immigration status into evidence at trial. He argues that his immigration status is not relevant to any issue that will be before the trier of fact and that, further, such information would be highly prejudicial. At the hearing, the government reported that it does not intend to introduce any evidence of Mr. Corona's immigration status in its case-in-chief. Mr. Corona's Motion in Limine to Preclude Admissibility of Immigration Status **[Doc. 158]** is **GRANTED** to the extent that the government shall not introduce evidence regarding his immigration status at trial. The Court reserves ruling for the District Court on the issue of whether the government may use this information to impeach Mr. Corona's testimony, should he offer testimony that makes it relevant and appropriate. Should the attorney for the government believe circumstances warrant its use, he should alert the trial court in order to obtain a ruling before introducing evidence of Mr. Corona's immigration status.

### 6. Motion to Dismiss on Basis of Improper Venue [Doc. 159]

Mr. Corona moves the Court to dismiss the indictment for lack of venue for the offenses alleged. [Doc. 159] and [Doc. 160]. Mr. Corona argues that the Constitution's Article III, Section 2, Clause 3 requires that venue for a criminal offense lies in the district where the offense was committed. Mr. Corona argues that the Superseding Indictment [Doc. 135] does not allege an act committed by Mr. Corona in the Eastern District of Tennessee. Mr. Corona relies, in part, upon United States v. Cabrales, 542 U.S. 1 (1998), which provides that the "*locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Cabrales, 524 U.S. at 6-7 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). Mr. Corona argues that he has never been in Tennessee, could not have committed a criminal act within Tennessee and that, under such circumstances, it is improper to put him to trial

in the Eastern District of Tennessee.

The government responds that the defendant stands charged with violating federal criminal statutes in the Eastern District of Tennessee and, as such, the District Court for the Eastern District of Tennessee is the proper venue for the case, [Doc. 127]. The government argues that drug conspiracies may be prosecuted in any district in which an overt act in furtherance of the conspiracy was committed by *a* conspirator, not necessarily *each* conspirator, relying upon United States v. Crozier, 259 F.3d 503 (6th Cir. 2001). Crozier provides that venue is proper in a district in which a co-conspirator committed an overt act in furtherance of the conspiracy, even if the defendant never entered that district. Crozier, 259 F.3d at 519.

The present case involves alleged violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §1956 (a)(1)(A)(i) - conspiracy to distribute cocaine and money laundering - as charged by the government in counts 1 and 2 of the superseding indictment, [Doc. 135]. In counts 3, 4 and 5, the government alleges three overt acts in furtherance of the conspiracy, purportedly committed in the Eastern District of Tennessee on May 6, May 26, and June 17 of 2005. Mr. Corona is named as a participant in each of the three overt acts. Where a challenge to proper venue has been lodged, the government must prove by a preponderance of the evidence that venue is proper as to each count of the indictment. United States v. Thomas, 74 F.3d 701, 709 (6th Cir.), cert denied, 519 U.S. 820 (1996).

The Constitution guarantees the right of an accused to be tried where the crime is alleged to have been committed. U.S. Const. art. III, § 2. The Federal Rules of Criminal Procedure likewise provide: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." Fed. R. Crim. P. 18. Cases in which the crime was allegedly committed in more than one district "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. 18 U.S.C. § 3237(a). Consequently,

while venue may also be proper in another district, "venue is not limited to a single district when a crime implicates more than one location." United States v. Beddow, 957 F.2d 1330, 1335 (6th Cir. 1992).

Because venue is often appropriate in more than one district, the Sixth Circuit applies a test of "substantial contacts" to determine the proper venue. United States v. Williams, 788 F.2d 1213, 1215 (6th Cir.1986). This test "takes into account a number of factors including the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." Williams, 788 F.2d at 1215 (quotation omitted).

In a conspiracy a prosecution, such as Mr. Corona's case, venue is proper in any district where the agreement was formed or in any district where an overt act in furtherance of the conspiracy was committed. See United States v. Zidell, 323 F.3d 412 (6th Cir. 2003) cert. denied 541 U.S. 957 (2004). In Zidell, the Sixth Circuit observed that possession with intent to distribute a controlled substance is a continuing offense. As such, the determination of venue is governed by the "continuing offense" statute, 18 U.S.C. § 3237(a), under which an offense begun in one district and completed in another, or committed in more than one district, may be prosecuted in either district, "and it is not essential that the defendant ever have been physically present in the district in question, so long as the offense continued into this district." Zidell, 323 F.3d at 421-25.

Both conspiracy and drug importation are considered continuous crimes and they are not completed until the drugs reach their final destination. Accordingly, venue is proper in any district along the way. United States v. Turner, 936 F.2d 221 (6th Cir. 1991). See also United States v. Brika, 416 F.3d 514, 528 (6th Cir. 2005); and Williams, 788 F.2d at 1216-17 (considering the district in which "the detrimental effects" of the crime are "most strongly felt" in venue analysis);

17

c.f., United States v. Fonseca, 193 Fed.Appx. 483, 492 (6th Cir. 2006) (finding "the record replete with evidence that the overt acts in furtherance of the conspiracy took place in the Eastern District of Tennessee where a defendant in Georgia provided methamphetamine to co-defendants who traveled from their homes in Tennessee to make the purchases from him.)

Based upon the allegations, it does appear that venue for a trial on their merits is proper in the Eastern District of Tennessee. Mr. Corona's Motion to Dismiss on Basis of Improper Venue **[Doc. 159]** is **DENIED**.

### 7. Conclusion

The Court's ruling on these matters is as follows:

    1. Motion to Exclude Hearsay Statements of Co-Defendants or Any Testimonial Statements of Non-Testifying Individuals From Any Joint Trial, Or, In The Alternative, For Severance **[Doc. 56]** is **DENIED**;

    2. Motion for Hearing to Determine Existence of Conspiracy **[Doc. 58]** is **DENIED**;

    3. Motion to Compel Government to Provide Defendant With Exhibit and Witness List in Advance of Trial **[Doc. 60]** is **DENIED**;

    4. Motion in Limine to Preclude Admissibility of Prior Convictions **[Doc. 157]** is **GRANTED** in part and **DENIED** in part, as set forth above;

    5. Motion in Limine to Preclude Admissibility of Immigration Status **[Doc. 158]** is **GRANTED**;

6. Motion to Dismiss on Basis of Improper Venue **[Doc. 159]** is **DENIED**.

IT IS SO ORDERED.

ENTER:

_____s/ H. Bruce Guyton_____
United States Magistrate Judge