UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-148 |
| | ) | (Phillips / Guyton) |
| VICENTE CORONA, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court for an evidentiary hearing on defendant Vicente Corona's Motion to Suppress Statements [Doc. 82], along with several other pretrial motions. The government and the defendant separately asked for leave to file supplemental material to the hearing, which was granted. Accordingly, the Court took all pending pretrial matters under advisement on April 18, 2007. This Report and Recommendation addresses solely Mr. Corona's Motion to Suppress Statements [Doc. 82].

The proof at the hearing established the relevant facts as follows.[1] On January 7, 2006, Knoxville-based agents from the Drug Enforcement Agency ("DEA") and the United States Postal Inspection Service ("USPIS") were in California as part of an ongoing criminal investigation. On that date, Mr. Corona allegedly participated in a drug transaction with Kimberly Robinson in

---

[1] A transcript of the evidentiary hearing has been filed for use by the Court at [Doc. 279].

1

Porter Ranch, California.[2]  The transaction was recorded and monitored by law enforcement agents by means of electronic device.  As soon as the transaction was complete, at least 13 officers from a variety of law enforcement agencies appeared on the scene to effectuate the arrest. [Tr. at 94].  Mr. Corona was handcuffed and put into the back of a police vehicle. [Tr. at 94-95].

Next, USPIS Inspector Wendy Boles ("Inspector Boles") and DEA Special Agent Bethel Poston ("Agent Poston") transported Mr. Corona from the site of the arrest to the federal building in downtown Los Angeles, to the local DEA headquarters [Tr. at 89-90, 95, 104].  This Motion to Suppress arises from the series of events following Mr. Corona's arrest, specifically during that drive to the federal building.

Inspector Boles testified that the drive from Porter Ranch to Los Angeles took about two hours. [Tr. at 95].  Agent Poston drove the car while Inspector Boles rode in the backseat with Mr. Corona.  Although a number of agencies were represented at this arrest, none of the officers had advised Mr. Corona of his Fifth Amendment Miranda rights.  Miranda v. Arizona, 384 U.S. 436 (1966).  Inspector Boles and Agent Poston spent two hours in a car with Mr. Corona, but they did not advise him of his Miranda rights during that time.  See [Tr. at 104].

Inspector Boles, however, did ask Mr. Corona questions from a six-page form entitled "Investigative History Files, Personal History Data."  Exhibit 1 [Tr. at 96].  The form was rather detailed in its questions, including questions about citizenship status, a line of questioning which was potentially incriminating to Mr. Corona.  At some point after this questioning was completed,

---

[2] Ms Robinson was cooperating with the efforts of law enforcement in hopes of deriving benefit at her own sentencing (and that of her co-defendant husband) in another case.  Ms Robinson testified about the transaction, her role and her motivation in some detail at the evidentiary hearing in proof relating to another pretrial motion. [Tr. at 35 - 88]

Mr. Corona allegedly remarked, "It was that bitch who set me up, wasn't it?" Inspector Boles did not make a note about this comment on her Personal History Data form, nor did she make any other notation of it, then or later. [Tr. at 99, 101]. Mr. Corona was later advised of his right to counsel and right to remain silent pursuant to Miranda.

Mr. Corona argues that the agents violated his Fifth Amendment right against self-incrimination. He asserts that the personal history questioning by Investigator Boles was actually "interrogation," within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966), and was a mere pretext to get Mr. Corona to open up and incriminate himself. The government acknowledges that Mr. Corona was in custody and that the agents did not give him Miranda warnings prior to or during the drive to Los Angeles. However, the government argues that the questioning did not amount to interrogation, because it was limited to "routine booking questions"; thus, any statements made by Mr. Corona other than in response to the routine booking questions were voluntary.

As a threshold matter, the Court observes that Miranda does not apply to statements volunteered outside of interrogation: "[c]onfessions remain a proper element in law enforcement.. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Innis, 446 U.S. at 299-300 (quoting Miranda at 478). Similarly, "[r]outine biographical information elicited during the booking process does not constitute interrogation under a Fifth Amendment Miranda-rights analysis." United States v. Godinez 114 F.3d 583, 589 (6th Cir.1997); United States v. Clark, 982 F.2d 965, 968 (6th Cir.1993); United States v. Avery, 717 F.2d 1020, 1024-25 (6th Cir.1983).

However, statements provided in response to "questioning designed to elicit incriminating information from a defendant" are subject to scrutiny under Miranda. Rhode Island

3

v. Innis, 446 U.S. 291, 300 (1980); Estelle v. Smith, 451 U.S. 454, 469 (1981); see also United States v. Murphy, 107 F.3d 1199, 1204-04 (6th Cir. 1997); United States v. Montano, 623 F.2d 147, 149 (6th Cir. 1980); United States v. Hurst, 228 F.3d 513, 759-60 (6th Cir. 2000); McGraw v. Holland, 257 F.3d 513, 518-20 (6th Cir. 2001).

In the present case, there is no question that Mr. Corona was in custody and that the statement he allegedly made, "It was that bitch who set me up, wasn't it?", was incriminating. The issue is whether it was made in response to interrogation or its functional equivalent. An "interrogation" subject to Miranda requirements occurs whenever there are words or actions on the part of the police that the police should know are reasonably "likely to elicit an incriminating response," Innis, 446 U.S. at 301-302. Further, the Supreme Court has provided that "interrogation," as conceptualized in Miranda, "must reflect a measure of compulsion above and beyond that inherent in custody itself." Innis, 446 U.S. at 301-302. For purposes of Miranda rules, "interrogation" cannot be equated with subtle compulsion. Id.

The Court finds Rhode Island v. Innis, 446 U.S. 291 (1980) squarely controls this case. In Innis, as here, a man in custody being transported by police was "suddenly ... moved to make a self-incriminating response." Innis, 446 at 292. Faced with facts parallel to those in the instant case, the Supreme Court concluded:

> While it may be said that respondent was subjected to 'subtle compulsion,' it must also be established that a suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response, which was not established here.
> Innis, 446 at 292.

As to Mr. Corona, the Court concludes that his remark was a statement volunteered outside of interrogation, and after inspector Boles had completed asking the defendant the questions on the Personal History Data form. The subject remark was not the product of the questioning or of compulsion above and beyond that inherent in custody itself. While the drive to the headquarters was two hours long, there is no indication that Agent Poston took a circuitous route or prolonged the situation. There is nothing in the record to suggest that Mr. Corona made the incriminating remark in response to a question asked by Inspector Boles, only that she asked questions from the Postal Service form, and later Mr. Corona made this single incriminating statement.[3] The Court finds from the testimony that Mr. Corona was, for his own reasons, suddenly moved to ask about the circumstances of his arrest - whether he had been set up by a confidante. It has been observed that the Fifth Amendment was not aimed at preventing foolish (rather than compelled) confessions. cf, United States v. Dickerson, 530 U.S. 428, 449 (2000)(Scalia, J., dissenting). The Court cannot find a Fifth Amendment violation under the circumstances of this case.

---

[3] The additional circumstance that Investigator Boles never recorded the remark, and that it was only memorialized three days later by Agent Poston in a report certainly goes to its weight as evidence before the trier of fact, but cannot be said to wholly defeat the use of the alleged statement at this stage.

For the foregoing reasons, the Court respectfully **RECOMMENDS** that defendant Vicente Corona's Motion to Suppress Statements **[Doc. 82]** be **DENIED**.[4]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).